**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NAMONEH KANDE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 8:21-cv-01262-PX |
| v. | * | |
| | * | |
| LUMINIS HEALTH DOCTORS | * | |
| COMMUNITY MEDICAL CENTER, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending in this pregnancy discrimination action is the motion for summary judgment filed by Defendant Luminis Health Doctors Community Medical Center, Inc. ("Luminis"). ECF No. 31. The motion is fully briefed and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the reasons that follow, the motion is GRANTED in part and DENIED in part.

**I.      Factual Background**

The following facts are construed in the light most favorable to Plaintiff Namoneh Kande ("Kande") as the non-moving party.

**A. Kande's Employment Before Her Pregnancy**

Luminis is a full-service hospital located in Lanham, Maryland. ECF No. 31-3 ¶ 2. Kande is a Black woman from Sierra Leone who joined Luminis on January 23, 2017, as a Business Applications Analyst in the hospital's Information Technology department ("IT"). ECF No. 31-5. In that role, Kande was responsible for maintaining the Meditech Electronic Medical Records software and various other software programs. ECF No. 31-3 ¶ 10; ECF No. 31-6; ECF No. 36 at 4. Kande supported Luminis' Health Information Management department ("HIM") and resolved its technical issues. ECF No. 31-3 ¶ 9; *see also* ECF No. 42-9 ¶ 4.g.

On April 23, 2017, Kande received her three-month performance review from her first line supervisor, Patricia McWhorter.  ECF No. 31-7.  McWhorter evaluated Kande across seven "Standards for Service Excellence" as well as seven "Role Specific Competencies" pertaining to Kande's technical performance.  *Id.*  For each category, Kande was given a score ranging from "1" on the lowest end to "5" as the highest, with "3" equivalent to "meets [the employer's] standard of performance."  Kande received at least a three in every category and an "Overall Performance Rating" of 3.1.  *Id.* at 4-5.  McWhorter additionally commented that "Namoneh is a great asset to the IT department.  She is engaged, motivated to learn and has established great working relationships."  *Id.* at 5.

In October of 2017, Kande reported to Luminis' coding department to provide technical support for a contractor, Akie Kargbo.  ECF No. 31-8.  The interaction between Kande and Kargbo turned unpleasant, and Kargbo called Kande a "Stupid Bitch."  *Id.*  Kande reported the incident to McWhorter and the Director of Medical Records, Minimol Palliparambil, and later filed an incident report with Human Resources ("HR").  *Id.*  Kande added in deposition that Kargbo had called her a "Black Stupid Bitch," but she did not report the racial epithet at the time of the incident because she did not feel comfortable doing so.  ECF No. 32-16 at 5-6; *see also* ECF No. 42-9 ¶ 2.  Within a week of Kande's report, Kargbo had apologized to her, ECF No. 31-9, and Luminis ultimately terminated its contract with Kargbo as a result of this incident.  ECF No. 32-17 at 5.

Next, on December 26, 2017, Kande notified McWhorter of two separate incidents involving an administrative assistant, Sue Weir.  ECF No. 31-10 at 1.  Kande forwarded an email dated September 13, 2017, where Weir apologized to Kande for "getting upset and raising [her] voice."  *Id.* at 1-2.  A few months later, Weir again yelled at Kande said, "F you."  ECF No. 42-6

at 11.  Although McWhorter asked Kande for more detail on what happened with Weir, ECF No. 32-16 at 9-10, nothing else in the record reflects how the incidents were resolved.

In March of 2018, Luminis' Chief Information Officer, Joyce Hanscome, retained an outside consultant, Pinnacle Talent Acquisition ("Pinnacle"), to evaluate the IT department. ECF No. 31-3 ¶ 23; *see also* ECF No. 31-11.  Pinnacle's investigation included a workplace culture assessment, for which it interviewed all 30 IT staff members.  ECF Nos. 31-11 & 31-12. In Kande's interview, she described HIM as a "hostile environment."  ECF No. 31-12 at 3. Kande expressed that, in her view, HR did not adequately address when Kargbo had called her a "stupid bitch"; she also reported separate incidents in which she had been verbally "abuse[d] by an administrative assistant.  *Id.*  At the time of the investigation, the HIM department had restructured such that IT specialists like Kande received service requests through electronic "Help Desk tickets" that evidently reduced face-to-face interactions among hospital employees. *Id.*

More broadly, Pinnacle's report noted employee dissatisfaction stemming from general feelings of being "overworked" and in anticipation of unpopular changes to the work shift schedules.  *Id.* at 4.  The report also referenced a separate "EEOC lawsuit" that was generating "much talk."  *Id.*   The report concluded with an array of recommended changes for the IT department, to include improving the employee reporting system for "harassment" complaints. *Id.* at 5-8.  It is unclear whether Luminis ultimately implemented any of Pinnacle's recommendations.

Around this time, McWhorter left Luminis, presumably due in part to longstanding friction with Palliparambil, who oversaw HIM.  ECF No. 36 at 2; ECF No. 49-1 at 2-3.  Ellen

McCauliffe replaced McWhorter as IT Applications Manager.   ECF No. 36 at 2.  McCauliffe

supervised eleven analysts, including Kande.  *Id.* at 3.

### B.   Kande Announces Her Pregnancy and Takes Leave

In May of 2018, Kande informed McCauliffe that she was pregnant.  ECF No. 34 at 8.[1]

During her pregnancy, Kande attended regular medical appointments, ECF No. 32-2 at 5, and

had to miss work on a handful of occasions.  ECF Nos. 31-21, 31-22, 31-23, & 32-1.  Whenever

Kande needed to leave work for appointments, she would notify McCauliffe.  *See* ECF Nos. 31-

14 (May 4, 2018); 31-15 (May 18, 2018); 31-16 (June 5, 2018); 31-17 (June 14, 2018); 31-18

(Aug. 16, 2018); 31-19 (Sept. 5, 2018); & 31-20 (Oct. 17, 2018).  According to Kande, she told

McCauliffe that her doctors' visits were related to her pregnancy.  ECF No. 42-9 ¶ 3.

McCauliffe, for her part, had assumed that Kande's appointments were for "pregnancy checks."

ECF No. 36 at 7; *see also* ECF Nos. 32-17 at 6 & 32-18 at 2.

Kande and McCauliffe also recall very differently how McCauliffe reacted to Kande's

pregnancy news.  McCauliffe attests that she suggested Kande take intermittent medical leave to

attend to her medical needs.  ECF No. 36 at 6-7.  Kande recalls McCauliffe telling her in August

of 2018 that she had "[too] many doctors' appointments" that were "disrupting the workflow,"

even though Kande had not taken any real time off from work.  ECF No. 42-6 at 17-18; ECF No.

42-27 at 6.  McCauliffe also urged Kande to take maternity leave immediately so that the

department could work with her replacement.  ECF No. 42-6 at 17-18.  Kande reported

McCauliffe's comments to HR Director, DeLace Burch, but Burch took no action.  ECF No. 42-

---

[1] Around the same time, Kande applied for the position of Senior Business Applications Analyst in the IT department, but she was rejected because she did not possess the requisite educational background.  ECF No. 31-13*; see also* ECF Nos. 32-17 at 2 & 32-16 at 17.

27 at 3.  From August until Kande started her maternity leave in October, McCauliffe would stop by Kande's office "on a daily basis" to check that Kande was at work.  *Id.* at 6.

Also, during an August IT meeting, Hanscome negatively referred to the timing of Kande's pregnancy as occurring "before a project."  ECF No. 42-9 ¶ 3; *see also* ECF No. 42-27 at 6.  Kande specifically recalls that a colleague of hers had intended to report to management that Hanscome said, "who gets pregnant during an implementation?" although no such report appears to have ever been filed.  ECF No. 42-27 at 2.

On September 18, 2018, Kande requested 12 weeks of maternity leave from her estimated due date of October 26, 2018, through January 18, 2019, which McCauliffe approved.  *See* ECF Nos. 32-2 at 2-3 & 32-3.  Sandra Delacerda was hired temporarily to fill in for Kande.  She was employed by a contract agency and therefore was not a Luminis employee.  ECF No. 36 at 12.  In the thirty days before her leave, Kande trained Delacerda and transitioned her work assignments.  *Id.* at 12-13.

On October 19, 2018, McCauliffe requested that Kande turn in her office key, even though Kande had not yet begun her maternity leave.  Kande refused, principally because Luminis' policy did not require it and, in the event McCauliffe needed access to the office in Kande's absence, a master key would allow entry.  ECF No. 32-16 at 11-12.

On October 26, 2018, Kande gave birth to her child and began her maternity leave.  ECF No. 34 at 2.  Thereafter, McCauliffe accessed Kande's email inbox, which Kande viewed as an invasion of privacy.  ECF No. 42-6 at 21.

### C.  Kande's 2018 Annual Performance Review

On November 12, 2018, while Kande was still on leave, McCauliffe completed Kande's annual performance review.  ECF No. 36 at 14; *see generally* ECF No. 32-4 ("November 2018

5

Review").  This time, Kande received a score of 2.38/5 and an Overall Performance Rating of

"Almost Meets Standards of Performance."  ECF No. 32-4 at 4.  According to the review, Kande

needed to "improve her ability to understand screen flow and software functionality for

[Meditech] and improve her follow-up communication."  *Id.* at 2.  Similarly, Kande was faulted

for not building "strong working relationships within the IT Application Team and the HIM

department she supports."  *Id.*  As to her subject matter expertise, Kande received the lowest

possible score of 1—"Does Not Meet Standards of Performance."  *Id.* at 3.  On that aspect of her

performance evaluation, the review stated that Kande had "been in her role for 18 months and

has not attained the needed technical expertise" to qualify as a subject-matter expert for

Meditech and related software applications.  *Id.*  Notably, the record does not include any

contemporaneous reports, complaints, or documentation to corroborate that Kande's work

product had suffered during the evaluation period.

Kande returned to work on January 21, 2019.  ECF No. 32-16 at 14.  In her absence,

Luminis "had gone live on a new upgraded system," switching from Meditech 6.1 to "Meditech

Expanse."  ECF No. 42-9 ¶ 7.  Kande was not familiar with Meditech Expanse.  *Id.*

Accordingly, Luminis extended Delacerda's contract so that she could "refresh" Kande upon her

return.  ECF No. 32-18 at 5-6.

### D.  Kande is Placed on a Performance Action Plan

On February 11, 2019, McCauliffe emailed Kande a copy of her November 2018

Review.  ECF No. 32-5.  Two days later, McCauliffe met with Kande to discuss placing her on a

Performance Action Plan ("Plan"), which purportedly was designed to help Kande remedy the

identified deficiencies in her work product.  *See* ECF No. 42-13 at 16; ECF No. 32-17 at 8.  Per

Luminis policy, any employee who receives an overall average score of less than three on the

end-of-year performance review must be placed on such a plan.  *See* ECF No. 32-19 at 2 (any employee scoring under 3.0 is placed on a performance action plan); *see also* ECF No. 32-17 at 8-11 (Kande's annual review triggered the Plan, but Luminis waited until after her maternity leave to implement it).

The Plan required Kande to meet regularly with HIM, update the Meditech "Task system," and also help prepare for a Meditech "Priority Pack update."  ECF No. 32-6 at 1-2.  The Plan also reprimanded Kande for her "insubordination" in refusing to give McAuliffe her office key prior to her taking leave, and reminded Kande that such behavior "is not going to be tolerated toward IT management[.]"  *Compare* ECF No. 32-6 at 3, *with* ECF No. 32-4 at 2 (evaluation scoring Kande "Meets Standard of Performance" for Respect and including no comments).  Last, the Plan made clear that "[f]ailure to meet the goals will lead to termination of employment[.]"  ECF No. 32-6 at 1.  Unsurprisingly, Kande disagreed with the Plan and "expressed that the alleged performance deficiencies noted concerning [her] performance were false."  ECF No. 42-9 ¶ 8.  McCauliffe and Burch emphasized to Kande that she would be fired if she did not agree to the Plan, so Kande signed it during the meeting.  ECF No. 42-6 at 25.

For Kande, the signed Plan was materially different from an earlier draft.  The initial draft Plan would have been in effect from January through June 2019, a timeline consistent with similar plans for other members of the IT department.  *Compare* ECF Nos. 42-24 at 1, *with* 42-23 (four months for Ericka Curry-McWhirter), 42-25 (two months for Keith Mitchell), & 42-26 (90 days for Gwen Atemkeng).  In the end, however, the Plan that applied to Kande gave her just 30 days for demonstrated improvement.  ECF No. 32-6 at 1.  McCauliffe has no memory as to why Kande was given such a short window.  ECF No. 42-13 at 25-26.  The record similarly provides no justification for only a 30-day period.

Shortly after Kande was placed on the Plan, she complained to Burch that the Plan "constituted a form of retaliation for opposing unlawful employment practices," and reminded Burch that she had complained in August of 2018 about harassing comments concerning her pregnancy and that she wanted the "abuse to stop."  ECF No. 42-27 at 4.  Around this time, Kande also complained to Hanscome about a "hostile work environment and being treated differently from other employees."  *Id.*  Nothing suggests that Burch or Hanscome took any action in response to Kande's complaints.

As to Kande's work under the Plan, she was required to meet weekly with McCauliffe.  ECF No. 32-16 at 16; *see also* ECF No. 31-3 ¶ 35 (describing a meeting on February 18, 2019).  Kande also continued to work with Delacerda on the Expanse platform as part of a five-week training plan.  *See* ECF No. 32-8 at 2.  On February 18, 2019, Delacerda emailed McCauliffe and Palliparambil that Kande "did not show much interest" in their work together, but that she later "took notes and printed screen shots[.]"  ECF No. 32-9.  Kande vigorously disputes Delacerda's characterization regarding her supposed lack of interest.  ECF No. 42-9 ¶ 10.

On February 18, 2019, the Meditech system malfunctioned, and operating room nurses could not enter their medical notes.  ECF No. 32-10.  Initially, Kande was blamed for causing the malfunction and, as a result, McCauliffe and Hanscome threatened immediate termination.  ECF No. 32-18 at 11.  Luminis also suspected that Delacerda was to blame, but did not threaten her with termination.  *Id.* at 9-11.  After a full investigation, Luminis determined that neither Kande nor Delacerda caused the IT breakdown.  *Id.*

On March 4, 2019, Kande participated in another check-in with McCauliffe.  ECF No. 31-3 ¶ 39.  According to McCauliffe's handwritten notes from the meeting, she discussed with Kande her response to two Help Desk tickets and two Meditech tasks related to Specialty Care

Nursing ("SCN") that required Kande's attention.  ECF No. 32-7 at 2.  They also discussed that HIM had not been copying Kande on group emails, which impeded Kande's performance.  *Id.*; *see also* ECF No. 42-10 at 31 (Kande noting she could not perform specific assigned job tasks because she was not included on the group IT email); ECF No. 42-9 ¶ 6 (Kande was also excluded from meetings and provided with limited information).  McCauliffe promised to follow up with Palliparambil about the lack of communication, although nothing suggests this follow up ever occurred.  ECF No. 32-7 at 1; ECF No. 42-6 at 30-31.

Kande and McCauliffe met again on March 11, 2019, at which time one of the Meditech SCN tasks remained outstanding.  ECF No. 32-11.  In McCauliffe's view, Kande was not performing necessary updates in a timely manner and not "working to the conclusion" on her assigned tasks.  ECF No. 42-13 at 20-22.  Although Kande recalls few details from her March meetings with McCauliffe, she insists that McCauliffe never expressed any dissatisfaction with Kande's performance.  ECF No. 42-6 at 26-29; *see also* ECF No. 42-9 ¶ 9.

### E.  Kande's Termination

Shortly after the March 11 meeting, Burch and Hanscome decided to fire Kande, even though her 30-day improvement period had not yet ended.  ECF No. 31-3 ¶ 40.  She was officially terminated on March 14, 2019, for "failure to meet the expectations of her performance plan."  ECF No. 32-17 at 14-15.  As to grounds for Kande's termination, email correspondence from McCauliffe to Burch noted that Kande had not worked the majority of her days in HIM; did not draft the necessary enhancements for HIM to prepare for the Meditech Priority Pack update; and failed to timely address the Meditech SCN task.  ECF Nos. 32-11.

That same day, Kande emailed Burch that she would be filing a grievance for her "wrongful termination."  ECF No. 32-12.  Specifically, Kande disputed that she had failed to

comply with the Plan and noted expressly that she had spent the required amount of time with HIM. *See id.*  On March 25, 2019, the Grievance Committee—a group of five Luminis employees—reviewed the termination decision and recommended in writing that Kande's discipline be reduced to a suspension.  ECF No. 42-12; ECF No. 42-9 ¶ 14.  As grounds, the committee noted "the hostile environment reported by [Kande] regarding verbal abuse in HIM" and that "all of the tools including a work station and software applications needed to perform all duties were not available in HIM during the 30 day performance plan."  ECF No. 42-12. Luminis rejected the committee's recommendation.  ECF No. 32-13; ECF No. 32-19 at 3-6.

After Kande was fired, Delacerda continued working for Luminis on a contract basis to fulfill Kande's job responsibilities.  ECF No. 32-18 at 8.  Sometime later in 2019, Luminis hired a Black woman, Liticia Franklin, to fill Kande's position.  *Id.* at 7-8; ECF No. 31-1 at 21.

## II.    Procedural History

On May 17, 2019, Kande filed a formal charge with the Maryland Commission on Civil Rights and the Equal Employment Opportunity Commission ("EEOC").  ECF No. 32-14.  On the preprinted form, Kande claimed sex-based discrimination and retaliation beginning August 7, 2018, through March 14, 2019.  *Id.*  In the narrative section, Kande noted that she also suffered race and national origin discrimination.  *Id.*  She detailed that McCauliffe harassed her about her pregnancy beginning on August 7, 2018, and that her complaints went unaddressed.  Kande further contested her alleged "poor performance" as grounds for her termination.  *Id.*  Although the EEOC declined prosecution and issued a right-to-sue letter, it did not conclude that "the claims have no merit" and it made "no finding as to the merits of any other issues[.]"  ECF No. 32-15.

On May 24, 2021, Kande filed suit, alleging that Luminis discriminated against her on account of her race (Count I), national origin (Count II), and sex, specifically pregnancy (Count III); and that Luminis subjected her to a hostile work environment (Count IV) and retaliated against her (Count V), all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  Kande also brings a separate retaliation claim under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA") (Count VI).  Luminis answered the Complaint, ECF No. 10, and discovery ensued.  On June 14, 2022, Luminis moved for summary judgment, principally contending that no genuine dispute of fact exists as to the legitimate, non-discriminatory reasons for Kande's termination, thus defeating her claims.  *See generally* ECF Nos. 31 & 31-1.  Kande has responded and the matter is now ready for resolution.

## III.    Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment[.]"  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  But "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt, Coleman &*

*Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is warranted.  *Celotex*, 477 U.S. at 322.

## IV.    Analysis

### A.   Title VII Limitations Period

Luminis first argues that any alleged discrimination or harassment that took place before July 20, 2018—namely, Kande's non-selection for the Senior Business Analyst position and Luminis' response to Kargbo and Weir's offensive commentary—is time barred.  ECF No. 31-1 at 22-24.  The parties do not dispute that Kande was required to file suit within 300 days from when any given act of discrimination occurred.  42 U.S.C. § 2000e-5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004); *see also Tolliver v. Eleven Slade Apartment Corp.*, No. CCB-19-2478, 2020 WL 6450282, at *2 (D. Md. Nov. 2, 2020) ("Because the Maryland Commission on Civil Rights is a state agency enforcing such laws, plaintiffs in Maryland have 300 days from the date of the alleged discrimination to file a charge.").  Kande filed her administrative charge on May 17, 2019.  *See* ECF No. 32-14.  The administrative charge thus captures conduct from the 300-day period preceding the filing date, or from July 20, 2018, through her termination.  Indeed, Kande does not oppose, or even respond, to Luminis' well-taken point that any conduct beyond the 300-day period falls outside the applicable limitations.  *See generally* ECF No. 42-1.  Accordingly, the Court grants Luminis' motion and will not consider the pre-July 2018 conduct.[2]

---

[2] It is well settled that acts extending beyond the applicable limitations period may support a hostile work environment claim.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-17 (2002); *see also Guessous v.*

With these parameters established, the Court next turns to the sufficiency of each claim.

**B.  Race and National Origin Discrimination (Counts I & II)**

Luminis maintains that no evidence supports Kande's race or national origin discrimination claims.  ECF No. 31-1 at 28-30.  Title VII prohibits both types of discrimination. 42 U.S.C. § 2000e-2(a).  In the absence of direct evidence of discriminatory animus, Title VII claims are subject to the well-established burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004)).  To sustain a claim, the plaintiff must first make a prima facie showing that she belongs to a protected class; that she was performing her job duties satisfactorily at the time that the employer took adverse action against her; and that the circumstances surrounding such adverse action give rise to an inference of discrimination. *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010); *see also Cook v. CSX Transp. Corp.*, 988 F.2d 507, 512 (4th Cir. 1993) ("The question confronting a judge faced with determining whether a prima facie case under Title VII has been made is whether the record as a whole gives rise to a reasonable inference of racially discriminatory conduct by the employer."). If the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking adverse action.  If the employer does so, the burden shifts back to the plaintiff to demonstrate that the stated reasons are mere pretext for discrimination. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254-56 (1981).

---

*Fairview Property Investments, LLC*, 828 F.3d 208, 221-22 (4th Cir. 2016) (describing this "continuing violation" doctrine).  That said, Kande's hostile work environment claim appears to be entirely predicated on alleged pregnancy harassment beginning in August of 2018.  ECF No. 1 ¶¶ 76-92.

Although Luminis raises several alternative grounds for summary judgment, the Court focuses on the contention that no evidence supports that either Kande's race or national origin motivated its employment decisions. As proof that Luminis fired her on account of her race or national origin, Kande argues that Luminis treated more favorably other similarly situated employees outside these protected classes. ECF No. 42-1 at 22-25. Although comparator evidence is not required to demonstrate discriminatory animus, *see Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003), a plaintiff relying on such evidence must put forward comparators who are "similar in all relevant respects." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). This typically means that the plaintiff and identified comparators shared "the same supervisor, [were] subject to the same standards, and engaged in the same conduct" but with disparate outcomes to the plaintiff's disadvantage. *Id.*

As comparators, Kande first points to her temporary replacement, Delacerda. ECF No. 42-1 at 22-23. Kande contends that both she and Delacerda, who is white, had been accused (wrongly) of causing a system-wide IT error, but that Kande was ultimately terminated where Delacerda was not. *Id.*[3] But as the record reflects, this is where the comparison begins and ends. Unlike Kande, Delacerda had been hired as a temporary contractor, ECF No. 32-17 at 13, and Delacerda relinquished her job responsibilities after Luminis filled Kande's position. ECF No. 32-18 at 8. On this record, no reasonable factfinder could conclude that the two women were similarly situated at Luminis; and even if they were, Luminis chose not to employ either of them

---

[3] The Complaint had also identified Samuel Hulbert as a potential comparator. ECF No. 1 ¶¶ 47, 55, 64. Kande, however, does not respond to Luminis' contention that Hulbert is not a proper comparator, ECF No. 42-1 at 22-23, and so she has abandoned this liability theory. *See Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (finding that plaintiff abandoned a claim by failing to address it in her opposition to defendant's summary judgment motion).

in the end.  Thus, no evidence gives rise to an inference that Delacerda had been treated differently at all, let alone differently on account of race or national origin.

Kande next identifies three other IT employee-comparators—Ericka Curry-McWhirter, Keith Mitchell, and Gwendoline Atemkeng—who had been treated more favorably than she and in a manner supporting an inference of discrimination.  ECF No. 42-1 at 23-25.  The Court assumes that a reasonable factfinder could consider them as fair comparators. All three worked under McCauliffe in IT and were placed on performance action plans, ECF No. 42-13 at 2, 22-24, but unlike Kande, each received more time to demonstrate improvement.  ECF Nos. 42-23, 42-25, & 42-26.  Yet no evidence suggests that this favorable treatment had anything to do with race.  Indeed, Curry-McWhirter, Mitchell, and Atemkeng are all Black.  *Compare* ECF No. 42-1 at 23-25, *with* ECF No. 31-1 at 29-30.  Moreover, as Luminis correctly points out, Kande's suggested inference of discrimination is further undermined considering that Luminis hired a Black woman to replace her.  ECF No. 31-1 at 30.  *Cf. Jyachosky v. Winter*, 343 F. App'x 871, 876 (4th Cir. 2009) ("Jyachosky is unable to establish the final element of a prima face case of gender discrimination because she was replaced by a member of her protected class[.]").

As to national origin discrimination, the record similarly cannot support the claim. Nothing suggests that Kande's national origin ever entered into Luminis' calculus.  To the contrary, that Atemkeng and Kande both hail from West Africa squarely undermines any suggestion that Kande's origins from a West African country animated Luminis to impose a comparatively harsh performance plan.  *See* ECF Nos. 31-1 at 30 & 49 at 11.  Accordingly, when viewing the record most favorably to Kande, no evidence supports a reasonable inference that Luminis treated Kande adversely on account of her race or national origin.  Thus, summary judgment is granted in Luminis' favor as to Counts I & II.

### C.  Sex Discrimination (Count III)

Kande's pregnancy-based discrimination claim compels a different outcome.  The

Pregnancy Discrimination Act of 1978, which amended Title VII, made clear that "women

affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all

employment-related purposes[.]"  42 U.S.C. § 2000e(k).  An employer may not discriminate

"because of or on the basis of pregnancy, childbirth, or related medical conditions."  *Id.*  A

pregnancy-based discrimination claim is analyzed under the well-trod *McDonnell Douglas*

burden-shifting framework.  *Glunt v. GES Exposition Servs. Inc.*, 123 F. Supp. 2d 847, 864 (D.

Md. 2000); *Ploplis v. Panos Hotel Grp., LLC*, 84 F. App'x 359, 360 (4th Cir. 2004).

Luminis does not meaningfully challenge that Kande belonged to a protected group, as

Luminis was well aware of Kande's pregnancy.  ECF No. 31-1 at 33; *see also* ECF No. 34 at 8

(Kande told McCauliffe she was pregnant in May of 2018).  Rather, Luminis first argues that no

evidence supports Kande had been fired on account of her pregnancy sufficient to make a prima

facie showing.  The Court disagrees.

The record reflects that prior to Kande becoming pregnant, she had received a solid

performance review in which she was touted as a "great asset to the IT department."  ECF No.

31-7 at 5.  Thereafter, the record is silent as to any performance deficiencies.  But this changed

after Kande became pregnant.  Even though Kande took little time off, McCauliffe chastised her

for "having [too] many doctors' appointments" on account of her pregnancy, which "disrupt[ed]

the workflow."  ECF No. 42-6 at 17-18.  Hanscome similarly commented during a department-

wide meeting "who gets pregnant during an implementation?"  ECF No. 42-27 at 2, 6.

The same supervisors next waited until after Kande took her maternity leave to issue a

poor annual review in her absence.  The November 2018 Review identified purported

16

weaknesses in Kande's work over the previous months.  Yet no other records reflect at all that Kande's work had suffered since her initial favorable evaluation.  ECF No. 42-13 at 8, 12-13.  And contemporaneous evidence construed most favorably to Kande supports that she had been performing her job duties as directed, both before and after she was placed on the Plan.  *See, e.g.*, ECF Nos. 42-17 & 42-21.  Thus, on this record, sufficient evidence exists that Kande had been meeting legitimate employment expectations but was terminated nonetheless in a manner giving rise to an inference of discrimination.

Luminis alternatively argues that even if Kande makes the prima facie showing, no evidence supports that its stated reasons for firing Kande were pretextual.  ECF No. 31-1 at 31-34.  On the question of pretext, a plaintiff must adduce some evidence that the employer's stated reason for terminating her was "not the true reason for the employment decision."  *Burdine*, 450 U.S. at 256.  The plaintiff may generate evidence either that shows the employer had been motivated by discriminatory animus or "that the employer's proffered explanation is unworthy of credence."  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804-05); *see also Heiko v. Colombo Sav. Bank, S.B.*, 434 F.3d 249, 259 (4th Cir. 2006) (citing *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005)).  Pertinent here, "when facts, if believed, would allow a trier of fact to think the employer was simply looking for a reason to get rid of the employee, the employer's proffered explanation may not be worthy of credence."  *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 383 (4th Cir. 2022) (quoting *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 296 (4th Cir. 2010)) (internal brackets and quotations omitted).  "The same evidence that [a] plaintiff put forward in support of her prima facie case can be employed to show pretext."  *Rodgers v. Eagle Alliance*, 586 F. Supp. 3d 398, 444 (D. Md. 2022) (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 516 (4th Cir. 2006)).

Kande has generated sufficient evidence in this regard.  Viewing the record most favorably to her, the supervisors who issued the November 2018 Review, put Kande on an unusually short improvement plan, and fired her are the same ones who expressly derided her for becoming pregnant.  Further, although the November 2018 Review claimed to chronicle her shortcomings for the prior year, *see generally* ECF No. 32-4, no other evidence supports the asserted deficiencies.  *Cf. Rodgers*, 586 F. Supp. 3d at 444-45 (absence of negative reviews and comparator evidence supported finding of pretext for sex discrimination claim).  From this, a reasonable juror could conclude that Luminis was "looking for a reason" to terminate Kande's employment following the birth of her child.  *Cowgill,* 41 F.4th at 383.  This alone precludes summary judgment as to Count III.

### D.  Hostile Work Environment (Count IV)

The Court turns next to Kande's pregnancy-based harassment or "hostile work environment" claim.  For the claim to survive summary judgment, the plaintiff must adduce some evidence that her employer's conduct related to her pregnancy was unwelcome and "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment[.]"  *Ward v. Acme Paper & Supply Co.*, 751 F. Supp. 2d 801, 806 (D. Md. 2010) (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003)); *see also Glunt*, 123 F. Supp. 2d at 863 (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 243 (4th Cir. 2000)).  Whether conduct is "severe or pervasive" depends on several factors, "including (1) the frequency of the discriminatory conduct, (2) the severity of the conduct, (3) whether the conduct was physically threatening, humiliating, or a mere offensive utterance, and (4) whether it unreasonably interferes with an employee's work performance."  *Ward*, 751 F. Supp. 2d at 806 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).  The "harassing conduct

must be so extreme as to amount to a change in the terms and conditions of employment";

barring extraordinary circumstances, "simple teasing, offhand comments, and isolated incidents"

will not suffice. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting

*Faragher*, 524 U.S. at 775) (internal quotations and bracket omitted).  Thus, "plaintiffs must

clear a high bar in order to satisfy the severe or pervasive test." *Id.*

  Luminis principally contends that the alleged misconduct, viewed most favorably to

Kande, simply is not sufficiently extreme or offensive to have altered the terms of her

employment.  ECF No. 31-1 at 34-35.  To support the claim, Kande highlights that in the six

months prior to her leave, McAuliffe criticized Kande for taking too much time off and

Hanscome asked "who gets pregnant during a project?"; McCauliffe also accessed Kande's work

email while she was on leave; and when she returned, Kande was excluded from meetings and

office communications.  ECF No. 42-1 at 35.  Although a reasonable juror could find the

supervisors' remarks offensive and indicative of discriminatory animus, they are too isolated in

time and context to have created a sufficiently hostile work environment.  *Sunbelt Rentals*, 521

F.3d at 315-16; *cf. Ward*, 571 F. Supp. 2d at 807 (coworker's "remarks immediately following

the news of [plaintiff's] pregnancy were rude and callous, but similarly isolated").  Nor could a

reasonable juror find that McAuliffe's access to Kande's work email while she was on leave to

be improper, let alone supporting this claim.  Last, Kande's exclusion from meetings, even

combined with offensive remarks, does not render the workplace so "permeated with

discriminatory intimidation, ridicule, and insult" such that the claim survives challenge.  *Sunbelt

Rentals*, 521 F.3d at 315 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *cf. People

v. Primo Elec. Co., Inc.*, No. RDB 05-971, 2007 WL 9780466, at *11 (D. Md. Apr. 12, 2007)

("Plaintiff's allegations that she was 'closely monitored' by her supervisor and excluded from

certain meetings are insufficient to support a claim for . . . hostile work environment.").  Thus, because no rational juror could find that the alleged misconduct constitutes a hostile work environment, the Court grants summary judgment in Luminis' favor on Count IV.

### E.  Title VII Retaliation (Count V)

Title VII also prohibits an employer from retaliating against an employee who complains about employer conduct prohibited under Title VII.  42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62-67 (2006).  For this claim, the plaintiff must first make a prima facie showing that she engaged in activity protected under Title VII; that the employer took adverse action against her; and that a causal connection exists between the two. *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018).  In the retaliation context, any actions that may "'dissuade[] a reasonable worker' from engaging in protected activity" are considered sufficiently "adverse" to sustain the claim.  *Id.* (quoting *Burlington*, 548 U.S. at 68).

Luminis first argues that nothing supports Kande having engaged in protected activity as understood in Title VII.  Importantly, protected activity is not limited to filing formal discrimination charges; rather "informal protests, such as voicing complaints to employers or using an employer's grievance procedures" are enough.  *See Rodgers*, 586 F. Supp. 3d at 446 (quoting *Armstrong v. Index J. Co.*, 647 F.2d 441, 448 (4th Cir. 1981)); *Lewis v. Forest Pharms., Inc.*, 217 F. Supp. 2d 638, 655 (D. Md. 2002) (explaining that "informal complaints to the employer suffice" for a prima facie showing of retaliation).  "[C]omplaining employees are protected if, at the time of their complaint, they 'have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress.'"  *Strothers*, 895 F.3d at 327 (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015)).

Kande complained to HR Director Burch on August 7, 2018, about McCauliffe chiding her for "disrupting" the department's workflow with her doctor appointments.  She next complained in January 2019 to McCauliffe and Burch about her treatment upon returning from maternity leave, and she complained again to Burch the following month that the Plan constituted retaliation.  ECF No. 42-27 at 3-4.  From this, a reasonable juror could conclude that Kande engaged in activity protected under Title VII.

Luminis next takes aim at whether the November 2018 Review and the Plan are sufficiently adverse to sustain the claim.  ECF No. 31-1 at 37-38.  Viewing the record most favorably to Kande, a reasonable juror could conclude that both had been sufficiently adverse to chill a reasonable employee from complaining about the employer's discriminatory acts.  *Cf. Brunson v. Johns Hopkins Cmty. Physicians, Inc.*, No. GLR-20-3677, 2022 WL 4386217, at *6 (D. Md. Sept. 21, 2022) (performance improvement plan was retaliatory adverse action); *Marley v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, No. GJH-17-1902, 2018 WL 4509900, at *7 (D. Md. Sept. 20, 2018) (same).  The November 2018 Review and the Plan each laid the groundwork for Kande's eventual termination.  *See* ECF Nos. 32-19 at 2 & 32-17 at 8-11, 14-15; *see also* ECF No. 32-11.  If Kande is believed, much of the alleged deficiencies in the November 2018 Review were false and were leveled against her with no meaningful opportunity to improve her performance.  To be sure, such accusations would temper any employee's appetite for availing herself of Title VII protected activity.

Luminis further maintains that no evidence supports any causal relationship between Kande's complaints and the alleged adverse actions.  ECF No. 31-1 at 39.  At the prima facie stage, not much is needed to establish causality.  *Strothers*, 895 F.3d at 335 (citing *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 251 (4th Cir. 2015)).  Temporal proximity is sufficient.  *Id.*

at 336-37 (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)).  Here, a mere three months elapsed between Kande's August 2018 complaints and the November 2018 Review.  Kande again complained in January and February of 2019 and was terminated less than one month later.  *Compare* ECF No. 42-27 at 4, *with* ECF No. 32-11.  *Cf. Carter*, 33 F.3d at 460 ("This court found a causal connection between a plaintiff's protected activity and her discharge where the employer, with knowledge of a pending discrimination complaint, fired plaintiff approximately four months after the complaint was filed.").  On this record, sufficient evidence exists from which a reasonable juror could find the requisite causation.

Lastly, Luminis asserts that even if Kande makes a prima facie showing, she cannot rebut Luminis' legitimate, non-retaliatory reason for the adverse performance review and her discharge.  ECF No. 31-1 at 39-40.  But for the same reasons that this Court denied summary judgment on the pretext question for the pregnancy discrimination claim, so too must summary judgment be denied here.  Kande has generated sufficient evidence that the stated grounds for her treatment are unworthy of credence and instead a cover for discriminatory animus.  Accordingly, the Court denies summary judgment as to Count V.

### F.  FMLA Retaliation (Count VI)

Like Title VII, the FMLA prohibits retaliation for employees engaging in protected activity.  29 U.S.C. § 2615.  FMLA retaliation claims "are analogous to those derived under Title VII" and are similarly subject to the *McDonnell Douglas* framework.  *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006) (citing *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001)).  Luminis does not dispute that Kande had engaged in protected activity when she took FMLA leave from October 2018 through January of 2019.  Nor does Luminis dispute that Kande's termination is sufficiently adverse.  Rather, Luminis seems to

contend that because Kande's alleged performance deficiencies predated when Kande had requested FMLA leave, those grounds for termination could not have possibly been in response to Kande having taken such leave.  ECF No. 31-1 at 41.

But this is precisely the question for resolution at trial.  No contemporaneous evidence exists to support that Kande's work had suffered before she requested maternity leave.  In fact, the only other formal performance review in the record, conducted in April 2017, had been quite favorable.  In the interim, no supervisor had reprimanded Kande for poor performance, nor did any coworker, vendor, or other member of the department lodge any complaints about Kande's work.  Thus, it will be for the jury to resolve whether Luminis or Kande has the better argument.

Luminis also contends that it fired Kande because she did not fix the deficiencies identified in her November 2018 Review "despite numerous opportunities to do so."  ECF No. 31-1 at 42.  But again, a genuine dispute of material fact exists as to whether the identified "performance deficiencies" were legitimate, and if so, whether a 30-day improvement window at all constitutes a real "opportunity" to cure such deficiencies.  Indeed, a reasonable juror could find that Luminis' decision to give Kande an atypically short thirty-day window, and then to fire her before that time had even expired, calls into question whether Luminis' "opportunity to improve" was ever genuine.  *Cf. Glunt*, 123 F. Supp. 2d at 872 ("Plaintiff has produced sufficient evidence to create a genuine issue for trial as to whether her alleged poor job performance is just a pretext for discrimination.").  In short, because disputes of fact exist as to whether Luminis' stated grounds for termination are genuine or pretextual, summary judgment must be denied as to Count VI.

## V.      Conclusion

For the foregoing reasons, the motion for summary judgment is GRANTED in part and

DENIED in part.  A separate Order follows.


March 13, 2023                                                          /s/
Date                                                          Paula Xinis
                                                              United States District Judge